IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE HANUS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 21-cv-05289 |
| v. | ) ) | Judge Andrea R. Wood |
| HARTING, INC., | ) ) | |
| Defendant. | ) | |

**ORDER**

    Plaintiff's motion for conditional certification, for approval and distribution of notice and for disclosure of contact information [14] is granted. The Court directs the parties to meet and confer regarding revisions to the proposed form of notice, and to file a join status report along with a revised form of notice and reminder notice by 6/7/2023. The joint status report shall include an agreed timetable for the notification process, including dates by which Defendant will provide names and last known mailing and email addresses of potential opt-in plaintiffs and by which notices will be sent. Plaintiff's motion to dismiss Defendant's counterclaim [36], [37] is denied. Telephonic status hearing set for 5/31/2023 is stricken and reset for 6/14/2023 at 9:15 AM. See the accompanying Statement for details.

**STATEMENT**

**I.    Background**

    From November 2019 through August 2021, Plaintiff Michelle Hanus was a customer support specialist ("CSS") at Harting, Inc. ("Harting"), a company that develops, manufactures, and sells electrical connectors.[1] (Compl. ¶¶ 15, 19, Dkt. No. 1.) During that time, Harting classified Hanus and other CSSs as salaried employees exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (*Id.* ¶¶ 22–23.) Hanus alleges that she and other CSSs regularly worked more than forty hours each week and that Harting knew or should have known about their overtime work, in part, because most of their work was timestamped. (*Id.* ¶¶ 35, 43–44.) However, Harting did not use a timekeeping system whereby Hanus and other CSSs could record and submit their time. (*Id.* ¶ 42.) Nor did Hanus or other

---

[1] Hanus's complaint refers to her as a Customer Support Representative ("CSR"), which Harting notes is not a position at the company; rather, Hanus was a CSS. (Harting Resp. at 2 & n.2, Dkt. No. 24.) Hanus does not object to the use of CSS instead of CSR because the company "is in an excellent position to know its own internal nomenclature and position structure" (Hanus Reply at 8, Dkt. No. 27). Accordingly, the Court uses the term CSS.

CSSs receive overtime pay or additional compensation for working in excess of forty hours per week. (*Id.* ¶ 45.)

Hanus has sued Harting asserting three claims. In Count I of the Complaint, Hanus asserts a claim against Harting for damages and declaratory relief under the FLSA based on her alleged misclassification as an exempt employee, which caused her to miss out on overtime pay. Count III contains a similar claim under the Illinois Minimum Wage Act ("IMWL"), 820 ILCS 105/1 *et seq.* In Count II, her collective action claim under 28 U.S.C. § 216(b), Hanus asserts that she and similarly situated employees were misclassified, depriving them of overtime pay.

Harting answered the complaint and then later amended that answer to assert a counterclaim for breach of contract. (Am. Answer, Dkt. No. 34.) The counterclaim alleges that Hanus signed a separation agreement ("Agreement") when she left Harting, pursuant to which she waived her right to become "a member of any class or collective action in a case in which claims are asserted against [Harting] that are related in any way to [Hanus's] employment or termination of [Hanus's] employment with [Harting]." (*Id.* ¶ 13 (internal quotation marks omitted).) Harting asserts that Hanus has breached the Agreement by bringing this proposed collective action.

Two motions are before the Court: Hanus's motion for conditional certification of her FLSA collective action (Dkt. No. 14) and Hanus's motion to dismiss Harting's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (Dkt. No. 36).

## II. Conditional Certification

Under the FLSA, an employee who alleges underpayment of wages due to misclassification may seek to bring a "'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) (quoting 29 U.S.C. § 216(b)). A collective action resembles a class action under Federal Rule of Civil Procedure 23, except in a Rule 23 class action, absent class members must affirmatively opt-out whereas in a collective action, members must affirmatively opt-in. *Id.* A district court has "wide discretion to manage collective actions." *Id.* at 449.

Collective actions proceed in two stages; only the first, conditional certification, is at issue here. *See Dennis v. Greatland Home Health Servs., Inc.*, 438 F. Supp. 3d 898, 899 (N.D. Ill. 2020). "The sole consequence of conditional certification is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). All a plaintiff must show at the conditional certification stage is a "modest factual showing sufficient to demonstrate that [the plaintiff] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hundt v. DirectSat USA, LLC*, 294 F.R.D. 101, 104 (N.D. Ill. 2013). At the conditional certification stage, "the court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Nicks v. Koch Meat Co., Inc.*, 265 F. Supp. 3d 841, 849 (N.D. Ill. 2017).

In this case, Harting raises three arguments against conditional certification. First, it contends that the waiver provision in Hanus's Agreement precludes her suit. Second, it argues that the proposed collective action is too small because it does not include more than five former

2

employees. And third, Harting contends that a collection action is improper because Hanus has not identified other potential plaintiffs who are interested in opting in to the suit. The Court considers each argument in turn.

### A. Certification and Wavier

First, the Court considers whether Hanus has made her "modest factual showing" that she and potential plaintiffs are "victims of a common policy or plan that violates the law." *Campbell v. Marshall Int'l, LLC*, 623 F. Supp. 3d 927, 2022 WL 3684571, at *1 (N.D. Ill. 2022) (internal quotation marks omitted). Here, Hanus relies on her sworn declaration, in which she states that she worked in close proximity to other CSSs and could interact with them and hear them working. (Hanus Decl. ¶ 9, Dkt. No. 14-7.) The other CSSs had similar schedules and job duties, and like Hanus, were paid a fixed amount rather than an hourly wage scaled depending on how much they worked. (*Id.* ¶¶ 10–12, 15.) Because of her ability to observe her colleagues' work hours personally and to discuss their work hours, the Court is satisfied that Hanus has made the factual showing necessary for purposes of conditional certification.

Harting argues that the wavier in Hanus's Agreement bars conditional certification because other nearly identical clauses have been found to waive the procedural right to a collective action. *See Copello v. Boehringer Ingelheim Pharms., Inc.*, 812 F. Supp. 2d 886, 894 (N.D. Ill. 2011) ("[W]hile FLSA prohibits **substantive** wage and hours rights from being contractually waived, it does not prohibit contractually waiving the **procedural** right to join a collective action."). As Hanus points out, each case relied upon by Harting arose after the defendant affirmatively sought judgment in its favor on the merits of the plaintiff's claim. *Copello*, for example, involved the plaintiff's motion for conditional certification, but also the defendant's motion for partial summary judgment on its counterclaim that the plaintiff had waived her collective action right. *Id.* at 888. Likewise, a second case involved a defendant's motion for summary judgment on its counterclaim for declaratory judgment that the plaintiff had breached a similar collective action waiver clause. *Brown v. Sears Holdings Mgmt. Corp.*, No. 09 C 2203, 2009 WL 2514173, at *1 (N.D. Ill. Aug. 17, 2009). In short, the district courts in *Copello* and *Brown* did not simply deny conditional certification, as Harting suggests; rather, they granted the defendants' respective motions for summary judgment.

One consideration in determining whether potential opt-in plaintiffs are similarly situated with the named plaintiff is the "defenses available to defendant and whether the defenses are individual to each plaintiff." *Molina v. First Line Sols., LLC*, 566 F. Supp. 2d 770, 787 (N.D. Ill. 2007). And unlike at the motion to dismiss stage, the Court is not obligated to accept all Hanus's allegations as true with respect to conditional certification. *Howard v. Securitas Sec. Servs., USA Inc.*, 2009 WL 140126, at *5 (N.D. Ill. Jan. 20, 2009). At this stage in the proceedings, it is not clear whether the opt-in plaintiffs would be subject to the same defenses as Hanus, nor must Hanus present evidence on that issue. Conditional certification is not the stage at which to consider substantive arguments regarding the viability of the claim, such as the Agreement's waiver provision. *Nicks*, 265 F. Supp. 3d at 849; *see also Hegazy v. Halal Guys, Inc.*, 2022 WL 4008237, at *3 (S.D.N.Y. Sept. 2, 2022) ("The existence of arbitration agreements is irrelevant to collective action approval because it raises a merits-based determination that is inappropriate at the initial stage of certification." (internal quotation marks omitted)). Instead, "the court requires nothing more than substantial allegations that the putative class members were together the

victims of a single decision, policy, or plan." *Larsen v. Clearchoice Mobility, Inc.*, No. 11 C 1701, 2011 WL 3047484, at *1 (N.D. Ill. July 25, 2011).

Because she has made the necessary modest factual showing, her collective action qualifies for conditional certification.

### B. Size of the Collective Action

Next, Harting argues that conditional certification is not warranted because, at most, there are five opt-in plaintiffs. But all that § 216(b) requires is a minimal showing that Hanus is similarly situated to the potential opt-in plaintiffs. *Hundt*, 294 F.R.D. at 104. The statute does not contain a numerosity requirement. *See Laughlin v. Jim Fischer, Inc.*, Case No. 16-C-1342, 2018 WL 2538356, at *8 (E.D. Wis. June 4, 2018) (conditionally certifying a collective action of, at most, either six or ten members). Given that there is no express minimum number of members necessary to conditionally certify a collective action, the Court finds that the potential size of the present action, while small, does not warrant denial of conditional certification.

Harting cites *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013), for the proposition that the analysis for certification of § 216(b) collective actions is identical to certification of Rule 23 class actions, because both are intended to "promote efficiency." *Id.* at 772. *But see Genesis Healthcare*, 569 U.S. at 74 (refusing to apply Rule 23 cases to an FLSA context in part "because Rule 23 actions are fundamentally different from collective actions under the FLSA"). But *Espenscheid* dealt primarily with whether there were common remedies among collective action plaintiffs, not numerosity. Moreover, Harting's argument conflates conditional certification with the second stage of the collective action analysis, which is more stringent. Indeed, *Espenscheid* addressed decertification of an already-conditionally certified class, not conditional certification itself. *See Lee v. Children's Place Retail Stores, Inc.*, No. 14 C 3258, 2014 WL 5100608, at *5 (N.D. Ill. Oct. 8, 2014) (declining to apply *Espenscheid* at the conditional certification stage because "the decertification stage is a more stringent analysis that closely resembles the requirements of Rule 23");[2] *see also Haugen v. Roundy's Ill., LLC*, 552 F. Supp. 3d 806, 808 (N.D. Ill. 2021); *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 345 (N.D. Ill. 2012); *Hundt*, 294 F.R.D. at 104. To the extent *Espenscheid*'s merging of Rule 23 and collective action analysis does apply in this context—and at least two courts have read its analysis as simply *dicta*[3]—the Court is not persuaded that it applies at this stage of the litigation.

---

[2] The bulk of the cases Harting cites arise at the decertification stage. *See Berger v. Perry's Steakhouse of Ill., LLC*, No. 14 C 8543, 2020 WL 5848374, at *1 (N.D. Ill. Oct. 1, 2020) (deciding whether to decertify a collective action); *Elder v. Comcast Corp.*, No. 12 C 1157, 2015 WL 3475968, at *5 (N.D. Ill. June 1, 2015) (applying Rule 23 standards to a motion for FLSA decertification); *cf. Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 507 & n.4 (7th Cir. 2018) (treating class actions and collective actions similarly for purposes of determining whether a court or an arbitrator would determine the arbitrability of a dispute).

[3] *See Reed v. Methodist Health Servs. Corp.*, Case No. 19-cv-1412, 2021 WL 1082010, at *8 (C.D. Ill. Mar. 1, 2021); *Dekeyser v. Thyssenkrupp Waupaca, Inc.*, 314 F.R.D. 449, 456 (E.D. Wis. 2016).

### C. Identifying Opt-In Plaintiffs

Finally, Harting argues that conditional certification must be denied because Hanus has not demonstrated that others wish to opt in. But as another court in this District has explained, requiring a plaintiff to identify other opt-in plaintiffs "before the class notice may be sent puts the cart before the horse." *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007). *See* also *Perizes v. Dietitians at Home, Inc.*, No. 19-cv-00740, 2021 WL 3849646, at *5 (N.D. Ill. Aug. 27, 2021) (declining to require evidence of individuals who wish to join the collective action before conditional certification); *Rossman v. EN Eng'g, LLC*, No. 19-cv-05768, 2020 WL 5253861, at *5 (N.D. Ill. Sept. 3, 2020) (same); *Dennis v. Greatland Home Health Servs., Inc.*, 438 F. Supp. 3d 898, 900 (N.D. Ill. 2020) (same). This Court agrees. Hanus may not have listed the names of other CSSs who have consented to join a putative collective action, but she shown personal knowledge of other CSSs who, based on her declaration, are similarly situated to her. (*See* Hanus Decl. ¶¶ 9–15.) The only way to know whether they will opt in is to offer that chance. Indeed, the purpose of notice—the "[s]ole consequence of conditional certification," *Genesis Healthcare Corp.*, 569 U.S. at 75—is to alert potential opt-in plaintiffs. Accordingly, the Court will not require Hanus to identify specific plaintiffs before notice has been provided.

For these reasons, Hanus's motion to conditionally certify a collective action for purposes of sending notice is granted. The conditionally certified class comprises all CSSs who worked for Defendant at any time after October 5, 2018.

### D. Notice

The remaining issue is the notice itself. Hanus seeks a period of ninety days for distribution of notice through U.S. mail, e-mail, and a reminder postcard through U.S. mail. She further requests that Harting post the notice "in a conspicuous location in the same areas in which it posts government-required notices." (Hanus Mot. ¶ 10, Dkt. No. 14.) Harting opposes a workplace posting of the notice and the reminder postcard as inappropriate, and argues that some of the language in the proposed notice improperly opines on the merits of the claims and encourages opting in.

As to the method of distribution, the Court sees no issue with the reminder postcard but agrees that the workplace posting is unnecessary. There are a small number of potential opt-in plaintiffs who are likely to be easily reachable and do not require a workplace posting. Indeed, the employees who would see a workplace posting are precisely the employees for whom Harting will have the most up-to-date contact information. As to the reminder notice, the Court does not find that such notice would create confusion about the Court's endorsement of the collective action or its feelings on the merits.

That said, the form of the notice proposed by Hanus raises some modest concerns. For example, Hanus should make clear, ideally on the first page of the notice, that while the Court approved the sending of the notice, it is not endorsing the lawsuit's merits and that any "inquiries should not be directed to the clerk ***or*** the court." *Howard*, 2009 WL 140126, at *10; *see also Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989) ("[T]rial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."). The notice

should also be corrected to reflect the accurate job title (*i.e.*, Customer Service Specialist) and employer (*i.e.*, Harting, Inc. of North America).

Accordingly, the Court directs the parties to meet and confer and to file a join status report along with revised (and hopefully agreed) forms of notice and reminder notice by June 7, 2023. The joint status report shall also provide an agreed timetable for the notification process.

### III. Hanus's Motion to Dismiss

The Court next turns to Hanus's motion to dismiss Harting's counterclaim for breach of contract. (Dkt. No. 36.)

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Hanus first argues that the counterclaim is premature because it alleges a breach of the clause barring membership in a class or collective action, and the Court has not yet conditionally certified the action. That argument is now moot—as the Court has conditionally certified the collective action with this Order. Alternatively, Hanus argues that she seeks to be the ***representative*** of the collective action, not a member, and that initiating a collective action is fundamentally different from being a member of one. Since the representative is not a member, the argument goes, she cannot possibly have breached her Agreement.

It is true that the named plaintiff typically takes on additional responsibilities as compared to opt-in plaintiffs. But that does not mean Hanus is no longer a member of the collective. To the contrary, the Seventh Circuit regularly describes representatives as members. *See, e.g., Smith v. Pro. Transp., Inc.*, 5 F.4th 700, 702 (7th Cir. 2021) ("[E]very member of a collective action, ***including*** the named plaintiff(s), must file a separate document entitled a Consent . . . ."); *Laughlin*, 2018 WL 2538356, at *1 (discussing a collective action involving "ten members, including both Named Plaintiffs"); *cf. Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 877–78 (7th Cir. 2012) ("[T]he named plaintiffs settle after denial of class certification and then exit the scene, [allowing] ***another member*** of the class [to] step forward . . . ." (emphasis added)).

In both *Copello* and *Brown*, the named plaintiff signed an agreement pledging not to become "a member of any class in a case in which claims are asserted" against their employer. *Copello*, 812 F. Supp. 2d at 890; *Brown*, 2009 WL 2514173, at *1. And in each case, the defendant successfully invoked the contractual clause to prevent the putative named plaintiff from establishing a collective action because any plain interpretation of "member" would include the named plaintiff, who must affirmatively opt-in. (*See* Hanus Consent to Join Collective Action ("Consent"), Dkt. No. 1-2.) Indeed, Hanus's own Consent states that she "consent[s] to becoming a party-plaintiff in this lawsuit." (*Id.*)

      The remainder of Hanus's arguments are similarly unavailing. She contends that she is not a member because some courts do not require named plaintiffs to file a consent. The Seventh Circuit recently discussed this issue and, in declining to decide it, nonetheless indicated that representatives are members. *Smith*, 5 F.4th at 703 ("The named representative, however, differs in certain ways from the ***other members*** of the group." (emphasis added)). That a representative has distinguishing characteristics or different responsibilities does not mean she is not a member. And Hanus ignores that a named plaintiff might not be required to file a separate consent by some courts because filing a collective action evidences consent.

      Finally, Hanus quotes a case stating that "service awards ***to named class members*** will generally not raise a red flag" for the plainly contrary proposition that named representatives are not class members. *T.K. v. Bytedance Tech. Co.*, No. 19-CV-7915, 2022 WL 888943, at *15 (N.D. Ill. Mar. 25, 2022). As before, Hanus's strained parsing of language does not support dismissal of Harting's counterclaim.

      Taking all facts as true, Harting states a plausible claim for relief. Accordingly, Hanus's motion to dismiss Harting's counterclaim is denied.

Dated: May 31, 2023

                                                              Andrea R. Wood
                                                              United States District Judge