UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE HANUS, <br><br> Plaintiff, <br><br> v. <br><br> HARTING, INC. OF NORTH AMERICA, <br><br> Defendant. | No. 21 CV 5289 <br><br> Judge Georgia N. Alexakis |

**MEMORANDUM OPINION AND ORDER**

From November 2019 to August 2021, Michelle Hanus worked as a salaried customer service representative for Harting, Inc. of North America, which manufactures electrical connectors. After leaving—and signing a severance agreement—Hanus brought a putative collective action against Harting under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.*, alleging that Harting failed to pay her and other customer service representatives overtime pay to which they were entitled. Harting brought a counterclaim, alleging that Hanus's suit breached her separation agreement, which prohibited participation in any collective action based on her employment at Harting.

Harting now moves for partial summary judgment on its breach-of-contract counterclaim and Count II of Hanus's complaint, arguing that, under the agreement, Hanus cannot proceed with the collective action. [67]. Because the agreement's collective-action waiver is enforceable, that motion is granted.

I. **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

II. **Background**

Hanus was one of several customer service representatives at Harting, a company that manufactures and sells electrical connectors for a variety of uses. [79] ¶¶ 1–3. Hanus and the other representatives were salaried employees. [35] ¶¶ 22–23. The core contention in Hanus's complaint is that she and the other representatives were improperly exempted from overtime wages and were therefore denied overtime pay to which they were entitled under state and federal law. *See generally* [1]; 29 U.S.C. §§ 207, 213(a)(1); 820 ILCS 105/4a(1)–(2).

For the instant motion, however, the parties are not concerned with Hanus's employment at Harting but rather with her departure. The parties agree on the basic facts. Hanus left Harting on August 6, 2021. [79] ¶¶ 3–4. She signed a severance agreement when she departed, for which she received severance benefits. *Id.* ¶¶ 3–5. The agreement included the following provision:

> Employee further waives and gives up any right to become, and promises not to consent to become, a member of any class or collective action in a case in which claims are asserted against Company that are related in any way to Employee's employment or the termination of Employee's employment with Company. If, without Employee's prior knowledge and consent, Employee is made a member of a class in any proceeding, Employee will opt out of the class at the first opportunity and will reject all monetary payment.

[72-1] at 2–3.

Hanus filed this suit two months later. [1]. Count I of Hanus's complaint brought individual claims under the FLSA, but Cout II sought to bring FLSA claims collectively on behalf of other customer service representatives. [1] ¶¶ 57–77. Harting moved for conditional class certification, [14], which Harting opposed with essentially the same breach-of-contract argument it makes now.[1] [24] at 5–8. Harting then brought the breach-of-contract counterclaim now at issue, [34], which Hanus moved to dismiss. [36], [37].

The court previously assigned to this matter granted Hanus's motion for conditional class certification and denied her motion to dismiss Harting's breach-of-contract counterclaim. [62]. In granting the class certification motion, the previous court concluded that "[c]onditional certification is not the stage at which to consider substantive arguments regarding the viability of the claim, such as the Agreement's waiver provision." *Id.* at 3. And because Hanus had "made the necessary modest factual showing, her collective action qualifie[d] for conditional certification." *Id.* at 4. As to Hanus's motion to dismiss the breach-of-contract counterclaim, the previous

---

[1] Harting also contended that the certification motion should not be granted because Hanus could not meet the necessary numerosity or notice requirements for the collective action, but those arguments do not bear on the instant motion. [24] at 8–15.

3

court accepted Harting's plausibly alleged facts indicating that Hanus had signed an agreement with a collective-action waiver and rejected Hanus's argument that as the class *representative* she would not be a *member* of the proposed class and thus fell outside of the text of the waiver provision. *Id.* at 6–7. Importantly, for purposes of her motion to dismiss the counterclaim, Hanus "assum[ed] without conceding that the Agreement was enforceable." [36] ¶ 5; [62] at 3. In other words, the enforceability of the collective-action waiver has not yet been squarely addressed in this proceeding.

### III. Analysis

The FLSA authorizes employees to bring a collective action against an employer for unpaid wages on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). The parties agree that the text of the agreement would prohibit Hanus from participating in such a collective action. [68] at 1; [76] at 4. Harting believes this collective-action waiver is enforceable, [68] at 10; Hanus does not, [76] at 2.

The Supreme Court has "frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the [FLSA]." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). This stance makes sense. Enforcing contracts that waived these rights would "nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Id.* (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)) (quotation marks omitted). Indeed, Harting concedes that Hanus's *individual* wage and hour claims have not been waived. [69] at 1.

4

The Seventh Circuit has not directly addressed the issue of whether FLSA *collective action* rights can be waived, but Harting points to two district court cases holding that such waivers, in severance-agreement provisions worded in a substantially similar manner as the provision here, to be enforceable.[2] [69] at 8–11 (citing *Brown v. Sears Holdings Management Corporation*, No. 09 C 2203, 2009 WL 2514173 (N.D. Ill. Aug.17, 2009); *Copello v. Boehringer Ingelheim Pharms. Inc.*, 812 F. Supp. 2d 886 (N.D. Ill. 2011)). Both *Brown* and *Copello* analogized to the Supreme Court's line of cases allowing waiver of collective action rights in the context of arbitration agreements to conclude that "while the FLSA prohibits *substantive* wage and hour rights from being contractually waived, it does not prohibit contractually waiving the *procedural* right to join a collective action." *Copello*, 812 F. Supp. 2d at 894; *see also Brown*, 2009 WL 2514173, at *4 (disagreeing "that Brown could not as a matter of law waive her ability to bring a class action under the FLSA").

Like the instant case, *Brown* did not involve an arbitration agreement. 2009 WL 2514173, at *3–4. But *Brown* examined the line of cases involving § 216(b) collective actions waivers in the context of arbitration agreements and concluded that while an employer "cannot contract itself out of paying overtime ... cases examining the availability of particular mechanisms for vindicating those rights have not concluded that they share the substantive and nonwaivable character of the various

---

[2] Harting also discusses *Niiranen v. Carrier One, Inc.*, No. 20-CV-06781, 2022 WL 103722 (N.D. Ill. Jan. 11, 2022), at length, [69] at 10-12, but because that case expressly distinguishes the state law claim it addressed from an FLSA collective action, *see Niiranen*, 2022 WL 103722, at *7, and the particular state law at issue in *Niiranen* is not at issue in the instant motion, the Court does not find *Niiranen* especially persuasive.

5

monetary remedies set out in § 216(b)." *Id.* at \*3 (listing cases). As a result, *Brown* concluded "the mere fact that class actions are mentioned within § 216(b) does not create a 'right' for a plaintiff to bring a class action." *Id.*

Both *Brown* and *Copello* rely on *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). The plaintiff in *Gilmer* sued his former employer under the Age Discrimination in Employment Act ("ADEA") but had signed an agreement to arbitrate any disputes arising out of his termination. *Id.* at 23. This is relevant here because the ADEA and FLSA have identical collective action provisions.[3] As a result, one of plaintiff Gilmer's arguments was that enforcing mandatory arbitration of his age-discrimination claims was inconsistent with the purpose of the ADEA because "arbitration procedures … do not provide for broad equitable relief and class actions." *Id.* at 32. After noting the "liberal federal policy favoring arbitration agreements," *id.* (cleaned up), the Supreme Court rejected Gilmer's argument because "arbitrators do have the power to fashion equitable relief" and because "even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred." *Id.* at 33 (quoting *Nicholson v. CPC Int'l Inc.*, 877 F.2d 221, 241 (3d Cir. 1989) (Becker, J., dissenting)). *Gilmer* further noted that arbitration agreements did not preclude the EEOC from seeking class-wide relief. *Id.*

---

[3] The Supreme Court has described the ADEA collective action provision as "identical collective action scheme (in fact, one borrowed from the FLSA)." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 515 (2018).

6

More recently, in a case that post-dates *Brown* and *Copello*, the Supreme Court has reaffirmed that collective action schemes like that of the FLSA do not "displace the [Federal] Arbitration Act or prohibit individualized arbitration proceedings." *See Lewis*, 584 U.S. at 515 (citing *Gilmer*, 500 U.S. at 32). In *Lewis*, the Supreme Court concluded that arbitration agreements requiring individualized arbitration proceedings for FLSA claims were enforceable under the Federal Arbitration Act ("FAA"). *Id.* at 525. Harting argues that this shows that the "FLSA does not provide an unwaivable right to a collective action." [83] at 9.

The Court agrees with Harting's reading of the relevant jurisprudence and is especially persuaded by the reasoning articulated in *Brown*. The waiver language in *Brown* and here is nearly identical. [68] at 8. And the Court agrees that the best way to read the existing cases concerning FLSA waivers is that although the core substantive individual rights and remedies afforded by the FLSA are nonwaivable, the procedural mechanisms are not. *See Brown*, 2009 WL 2514173, at *3; *Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 351 (4th Cir. 2008) ("opt-in" aspect of § 216(b) waivable in arbitration); *Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003) (§ 216(b) language does not create free-standing "right" to represent other plaintiffs). *Brown*'s conclusion has only been bolstered by *Lewis*, which addressed the question of whether "employees [should] always be permitted to bring their claims in class or collective actions, *no matter what they agreed with their employer*" and concluded that, at least in the context of the National

7

Labor Relations Act and FAA, the answer was no.[4] 584 U.S. at 502 (emphasis added). If the individualized arbitration proceedings at issue in *Lewis* were sufficient to vindicate FLSA rights, the Court does not see why individualized litigation in a judicial forum—something § 216(b) specifically provides for—would not be.

For her part, Hanus acknowledges that *Gilmer* and *Lewis* suggest that "the proposition that FLSA collective actions can be waived may be true," but contends that this is only true "where the parties agree to arbitrate their claims." [76] at 3. In support of this position, Hanus cites to *Killion v. KeHE Distributors, LLC*, 761 F.3d 574 (6th Cir. 2014), in which the Sixth Circuit concluded that similar collective-action waivers in severance agreements were not enforceable outside of the arbitration context. [78] at 3-4. Because no arbitration agreement existed, *Killion* concluded that *Gilmer* and similar cases did not apply because "no countervailing federal policy [] outweigh[ed] the policy articulated in the FLSA." 761 F.3d at 592. *Killion* thus found § 216(b) collective action unwaivable, because allowing waivers would give employers an "unfair advantage" and "discourage the employee from bringing a claim for overtime wages," all of which would run counter to the purpose of the FLSA. *Id*.

---

[4] Although the underlying issue in *Lewis* involved an FLSA collective action, the plaintiff-appellee did not argue that an FLSA collective action was an unwaivable right. The *Lewis* majority noted this curious omission and, in so doing, strongly indicated that *Gilmer* already foreclosed that position. *See* 584 U.S. at 499 ("In another contextual clue, the employees' underlying causes of action arise not under the NLRA but under the Fair Labor Standards Act, which permits the sort of collective action the employees wish to pursue here. Yet they do not suggest that the FLSA displaces the Arbitration Act, presumably because the Court has held that an identical collective action scheme does not prohibit individualized arbitration proceedings.") (citing *Gilmer*, 500 U.S. at 468).

The Court is unpersuaded by *Killion*. While *Killion* emphasizes the strong policy in favor of arbitration, the other federal appeals courts that have found waivers enforceable in the arbitration context have reached that result after concluding that the FLSA itself does not create a "non-waivable substantive right to a collective action." *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1335 (11th Cir. 2014); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052–53 (8th Cir. 2013) ("Even assuming Congress intended to create some 'right' to class actions, if an employee must affirmatively opt in to any such class action, surely the employee has the power to waive participation in a class action as well."). Because those conclusions about FLSA rights do not depend on the FAA, they "hold[] regardless of whether or not the waiver is made in the context of arbitration." *Benedict v. Hewlett-Packard Co.*, 13-CV-00119-BLF, 2016 WL 1213985, at *5 (N.D. Cal. Mar. 29, 2016).

A more recent Northern District of Illinois case—in part relying on *Killion*—submitted that an FLSA waiver was unenforceable where no arbitration agreement existed. *See Quinn v. Auto Inj. Sols., Inc.*, No. 1:20-CV-1966, 2020 WL 9397520, at *3 (N.D. Ill. Nov. 24, 2020). But the facts of *Quinn* distinguish it from *Brown*, *Copello*, and the instant matter: Unlike those cases, which involved waivers specifically of collective action rights, the waiver at issue in *Quinn* purported to release the employer "from any and all claims or demands of any kind." *Id.* at *2; *see also id.* at *3 ("Defendants have another problem: there is no language waiving FLSA collective actions in Quinn's release."). And, indeed, *Quinn* expressly distinguishes itself from *Copello* on that basis. *Id.* As a result, *Quinn* "decline[ed] to rewrite the parties'

9

agreement" to prevent the plaintiff from participating in the collective action. *Id.* But no judicial "rewriting" is needed here to craft an agreement that preserves Hanus's individual FLSA rights; that is the agreement that she signed.

An Illinois breach-of-contract action has four elements: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff." *See Gonzalzles v. Am. Exp. Credit Corp.*, 315 Ill. App. 3d 199, 206 (1st Dist. 2000) (elements of Illinois breach-of-contract claim). Because the collective-action waiver is enforceable, Harting has proven the first element. *Id.* Hanus admits that Harting performed its obligations under the agreement, so Harting has met the second element. [65] ¶ 27. Hanus has brought a collective action claim under the FLSA related to her employment at Harting, something clearly prohibited by the collective-action waiver and thus meeting the third element. [1] ¶¶ 66-77; [65] ¶ 12; *Gonzalzles*, 315 Ill. App. 3d 199 at 206 ("A defendant's failure to comply with a duty imposed by the contract gives rise to the breach."). And Harting has spent time and money litigating the waiver as a result of the breach, thus satisfying the fourth element. [69] at 8.

Hanus's other arguments against the existence of the contract are unavailing. Hanus contends that there was no consideration, and the waiver fails on that basis. [76] at 5-6. But Hanus was given money by Harting as part of the severance agreement, [65] ¶ 16, and anyway mutual binding promises can by themselves provide adequate consideration under Illinois law. *See Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 28, 830 N.E.2d 619, 625 (1st Dist. 2005) ("A mutual

promise to arbitrate would be sufficient consideration to support an independent arbitration agreement."). Finally, Hanus's argument that Harting has "unclean hands" relies on the assumption that the collective-action waiver is not enforceable. [76] at 7. But, as discussed above, it is enforceable. So Harting's hands are no less clean than the employers in *Gilmer* or *Lewis*.

## IV. Conclusion

Because the collective-action waiver is enforceable, Harting has demonstrated that it is entitled to judgement as a matter of law on its breach-of-contract counterclaim and on Count II of Hanus's complaint. Its motion for partial summary judgment [67] is therefore granted, and Count II of Hanus's complaint is dismissed with prejudice.

The parties are directed to appear for an in-person hearing status hearing on December 18, 2024, at 9:30 a.m. to discuss their proposed next steps in this matter.

ENTERED: 11/26/24

_____
Georgia N. Alexakis
United States District Judge

11